# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ABDUL-AZIZ RASHID MUHAMMAD,
aka William Anthony Brown,

        Plaintiff,

v.
                                         Case No. 1:03-cv-228
                                         (Chief Judge Keeley)

JANET BUNTS, as former Asst. Health Services
Administrator; DAVID BUCKINGHAM, former Health
Services Administrator; ELIZABETH MASTELLER,
Physician Asst.; PAMELA BENDER, Physicians Asst.;
TERESA PUCKETT, R.N.; J.D. HILL, Associate Warden;
K.M. WHITE, Mid-Atlantic Regional Director; G. STONE,
former Acting Warden; HARRELL WATTS, Administrator
of National Inmate Appeals, B.A. BLEDSOE, Warden; and
DR. DORIS WILLIAMS;

        Defendants.

## OPINION/REPORT AND RECOMMENDATION

On October 27, 2003, *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) (authorizing suits against federal employees in their individual capacities). In the complaint, plaintiff alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him adequate medical care and by denying him a lower bunk pass. Plaintiff filed an amended complaint on December 24, 2003. In the amended complaint, plaintiff adds Dr. Williams as a defendant and an Eighth Amendment claim with regard to the treatment of plaintiffs' Hepatitis C condition. Plaintiff filed supplemental pleadings on February 25, April 29, and May 11, 2004. In those pleadings, plaintiff asserts an additional Eighth Amendment claim pertaining to his placement in a job assignment that is inconsistent with his medical restrictions, and claims pertaining to conspiracy, retaliation, discrimination and

the alleged criminal behavior of the defendants.

Currently pending before the Court is the plaintiff's Motion for Reconsideration and the defendants' Motion to Dismiss, or Alternatively, for Summary Judgment. The motion to dismiss was referred to the undersigned by Order dated October 23, 2005, and is the subject of this Report and Recommendation.

## I. Plaintiffs' Pleadings

### A. The Complaint

Plaintiff was transferred from the McKean Federal Correctional Institution (FCI-McKean) in Bradford, Pennsylvania, to the Gilmer Federal Correctional Institution (FCI-Gilmer) in Glenville, West Virginia, on June 10, 2003. Upon his arrival at FCI-Gilmer, plaintiff received a medical screening by Defendant Bender. During the course of that screening, plaintiff informed defendant Bender that he was a chronic care patient and that, two days prior to his transfer, he injured his knee while running. Plaintiff informed defendant Bender that because he injured his knee on a weekend, his injury was not assessed at FCI-McKean. Instead, he was only given pain medication and told to return for additional follow-up. However, plaintiff was transferred to FCI-Gilmer before he could be seen by the medical staff at FCI-McKean. Plaintiff also informed defendant Bender that he had a medically necessary knee brace and soft shoes that were confiscated on the bus during his transfer. Plaintiff requested that those items be returned as soon as possible. Plaintiff asserts that because of his knee injury, he requested pain medication and a lower bunk pass during his medical screening with defendant Bender.

In response to plaintiffs' requests, defendant Bender informed plaintiff that she could not comply with his requests until his injuries were assessed by the medical department and until the

Utilization Review Committee (URC) approved his request for a lower bunk pass. Defendant Bender advised plaintiff to return to medical the next day. Because plaintiff was not satisfied with this response, defendant Masteller was called for a consultation. Defendant Masteller concurred with defendant Bender's assessment and informed plaintiff that he would have to be seen by the medical department before his requests could be granted.

As suggested by defendants Bender and Masteller, plaintiff presented to the medical department the next day. Plaintiff was taken to an examination room and was seen by defendants Puckett and Bunts. As plaintiff was explaining his injuries and making his requests, he was told by defendant Bunts that, per policy, he would have to be seen by his "provider" before pain medication, a lower bunk pass, or any other care could be prescribed. Defendant Bunts informed plaintiff that he would be seen by his provider within five days.

On June 16, 2003, after five days had passed, plaintiff returned to medical and was seen by defendant Masteller. Plaintiff requested pain medication and a lower bunk pass. Defendant Masteller asked to see plaintiff's knee. However, before defendant Masteller could examine the plaintiff's knee, defendant Bunts arrived. Defendant Bunts informed plaintiff that nothing had changed, that he still needed to be seen by his provider before further care could be provided, and that his request for a lower bunk pass had to be approved by the URC.

At or near this same time, plaintiff asserts that he approached Defendant Buckingham at least three times seeking his help in obtaining pain medication and a lower bunk pass. Plaintiff was again told that he must be seen by his provider before medication could be issued and that his lower bunk request had to be approved by the URC.

Plaintiff was seen by his provider, Physician Assistant Lichty (PA Lichty), on June 19,

2003. Plaintiff explained his injuries to the PA and requested pain medication, a lower bunk pass and tests to determine the extent of his knee injury. PA Lichty informed plaintiff that the URC had to hear his request for a lower bunk, soft shoes and an MRI, but that she would recommend to the committee that plaintiff's requests be granted. Plaintiff was prescribed pain medication, but he did not receive it for two days.

On June 26, 2003, plaintiff reported to medical complaining that the prescribed pain medication was not effective. Plaintiff received a blood test and x-ray of his knee during that visit. The following day, plaintiff again reported to medical seeking a change in his pain medication and a lower bunk pass. PA Lichty prescribed plaintiff a new pain medication and granted plaintiff a temporary lower bunk pass.

On July 3, 2003, plaintiff received the results of his x-rays. The x-rays showed that there was "minimal degenerative changes at L4-L5 [the cite of plaintiff's back injury] without dislocation or fracture" and "degenerative changes of the patella." Complaint at 35.

On July 8, 2003, plaintiff reported to medical complaining that his pain medication was not working, that he was never assigned a lower bunk, and that he had not yet received an MRI. Plaintiff was told that he would be scheduled for an appointment with his provider within five days.

During this time period, and into August of 2003, plaintiff continued to inform defendant Buckingham and defendant Hill of his medical conditions and perceived lack of care. Both defendants deferred to the judgment of plaintiff's medical providers and did not intervene.

On August 13, 2003, plaintiff reported to medical complaining of pain in his injured knee, but was turned away by defendant Masteller. Plaintiff was told that he would have to be

rescheduled because his provider, PA Lichty, was not in that day.

On August 15, 2003, plaintiff reported to medical with similar complaints and was seen by PA Swanson. After an examination, PA Swanson informed plaintiff that an MRI may be necessary to diagnose his knee injury and increased the dosage of plaintiff's pain medication.

On September 3, 2003, plaintiff reported to medical seeking an additional increase in the dosage of his pain medication and information on when he would be scheduled for an MRI. Plaintiff was told to watch the prison "call-out."

On September 5, 2003, plaintiff was seen by PA Lichty. Plaintiff was told he would be scheduled for an MRI as soon as possible.

On September 24, 2003, plaintiff once again reported to medical seeking an increase in the dosage of his pain medication and information on when he would be scheduled for an MRI. Plaintiff was told that his injury was "non-emergent" and that only his provider could change his medication.

On September 26, 2003, plaintiff received a medical call out and reported to health services. Plaintiff was seen by his provider. During this visit, plaintiffs' pain medications were changed and he was informed that there was a complication in trying to obtain his MRI.

As a result of the previously described events, plaintiff asserts that the defendants were deliberately indifferent to his serious medical needs, negligent, and medically negligent. Plaintiff also asserts that the actions of the defendants were part of conspiracy, were retaliatory, and denied him due process and equal protection. Finally, plaintiff asserts that the actions of the defendants were discriminatory.

B. The Amended Complaint

In the amended complaint, plaintiff names several new defendants and asserts that those defendants were deliberately indifferent to his serious medical needs when they failed to timely inform him that he tested positive for the Hepatitis C virus and failed to appropriately treat him for that condition. As additional defendants, plaintiff names several staff members at FCI-McKean and Doris Williams, a medical doctor at FCI-Gilmer. Plaintiff asserts that several of the original defendants were also involved in denying him appropriate treatment for his Hepatitis C.

## C. Plaintiff's Supplemental Pleadings

In the supplemental pleadings filed on February 25, April 29, and May 11, 2004, plaintiff alleges that the defendants retaliated against him for filing grievance and for filing this suit. Specifically, plaintiff alleges that in December 2003, he was removed from his job as a unit orderly and assigned a "CCS" job which consists of working outside and picking up trash, shoveling snow, and sweeping. Plaintiff alleges that this was done because the defendants knew that the cold weather and strenuous physical work would aggravate his knee and back problems. Additionally, plaintiff alleges that this was done in spite of the medical restrictions placed on his work assignments.

Plaintiff also alleges that the defendants have written false disciplinary charges against him, have harassed him while he is praying, has attempted to create an environment in which other inmates become hostile toward him, have denied him copies and postage for his legal papers, have generally harassed and threatened him, have unjustly confiscated his papers and other property, have placed him in segregation without cause, and have illegally and violently searched his cell.

## II. First Report and Recommendation

On August 4, 2004, the undersigned issued his first report and recommendation in this case. In that opinion, I found that, in the amended complaint, plaintiff attempted to raise claims against individuals whom the Court has no personal jurisdiction. Therefore, I recommended that the staff members of FCI-McKean named in the amended complaint be dismissed. However, I recommended that plaintiff allegations against Defendant Williams move forward, as well as plaintiff's additional claims against the original defendants.

On August 20, 2004, the District Judge adopted the first report and recommendation. Thus, Dr. Williams was added as a defendant and plaintiff's claims regarding his Hepatitis C were also added.

**III. Third Report and Recommendation**[1]

On January 10, 2005, the undersigned conducted a preliminary review of the file pursuant to 28 U.S.C. §§ 1915(e) and 1915A,[2] and issued a report and recommendation as to the viability of plaintiffs' claims on federal review. In that opinion, I determined that plaintiff was raising claims pursuant to both <u>Bivens</u> and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, <u>et seq</u>. I also found that plaintiff was attempting to raise claims pursuant to 28 U.S.C. § 1367, 18 U.S.C. § 4042, and 18 U.S.C. §§ 241, 242, 245, and 1001.

---

[1] I also issued a Second Report and Recommendation on August 25, 2004, regarding a motion for protective order filed by plaintiff. <u>See</u> Doc. 20. However, because that Order does not deal with any of the remaining claims, it will not be addressed in more detail in this Opinion.

[2] Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Title 28 U.S.C. 1915(e) also directs the court to dismiss actions which are frivolous or malicious.

With regard to plaintiffs' <u>Bivens</u> claims, I determined that only plaintiff's claims regarding the care he received for his knee and back and his claims regarding his job assignment were exhausted. Alternately, however, I determined that even had plaintiff exhausted all of his <u>Bivens</u> claims, his claims that defendants Hill, White, Stone, Watts, and Bledsoe denied him appropriate medical treatment should be dismissed because plaintiff failed to establish that any of those defendants were personally involved in the alleged deprivation or that supervisory liability applied. Moreover, the undersigned found that defendants Bunts, Buckingham, Masteller, Bender, Puckett and Williams were not deliberately indifferent to plaintiff's knee condition, back condition, or his Hepatitis C condition. I also found that plaintiff failed exhaust his equal protection claim, or alternately, that plaintiff failed to state an equal protection claim.

However, in that same order, I also determined that plaintiff's claim that defendants Bunts, Buckingham, Masteller, Bender, Puckett and Williams denied plaintiff pain medication for his knee for 11 days and for allegedly denying him a lower bunk should not be summarily dismissed. I also found that plaintiff's claim that defendants Bunts, Williams, Bledsoe and Hill violated his Eighth Amendment rights by assigning him to a job that exceeded his medical restrictions should not be summarily dismissed.

As to plaintiff's conspiracy claim, I found that plaintiff failed to show that a conspiracy existed between the defendants. Therefore, I recommended that plaintiff's conspiracy claims be dismissed for failure to state a claim.

As to plaintiff's tort claims, I found that plaintiff failed to exhaust his administrative remedies prior to filing suit and that his tort claims should be dismissed.

Finally, I determined that 28 U.S.C. § 1367, 18 U.S.C. § 4042, and 18 U.S.C. §§ 241,

242, 245, and 1001, were inapplicable and that any claims pursuant to those statutes should be dismissed.

Accordingly, it was my recommendation that plaintiffs' complaint be dismissed with prejudice, except for his claims that (1) defendants Bender, Bunts, Buckingham, Masteller, and Puckett denied plaintiff pain medication for 11 days; (2) defendants Bender, Bunts, Buckingham, Masteller, and Puckett denied him a low bunk; and (3) defendants Bunts, Bledsoe, Hill and Williams were deliberately indifferent to his serious medical needs by allowing his assignment to a work detail that exceeded his medical restrictions. Therefore, I recommended service of the complaint on defendants Bender, Bledsoe, Bunts, Buckingham, Hill, Masteller, Puckett, and Williams and the dismissal of defendants White, Stone, and Watts.

On March 30, 2005, the Third Report and Recommendation was affirmed in part and rejected in part by the District Judge. However, the District Judge ultimately concluded that plaintiff's equal protection claim; construed claims under 28 U.S.C. § 1367, 18 U.S.C. § 4042, 18 U.S.C. §§ 241, 242, 245 and 1001; retaliation claims, conspiracy claims supervisory liability claims and Eighth Amendment claims with respect to plaintiff's knee, lower back and rib condition, all be dismissed with prejudice. The District Judge also determined that plaintiff's claims against defendants White, Stone, and Watts be dismissed with prejudice, that plaintiffs' official capacity claims be dismissed with prejudice, and plaintiffs' Eighth Amendment claim with regard to his Hepatitis C condition be dismissed without prejudice. The District Judge directed the Clerk to serve the remaining claims upon defendants Bender, Bledsoe, Bunts, Buckingham, Hill, Masteller, Puckett, and Williams. A review of the docket shows that summonses issued as to those defendants that same day.

**IV.  The Defendants' Response to the Complaint and Amended Complaint**

In response to the complaint, amended complaint, and plaintiff's supplemental pleadings, Defendants Bunts, Masteller, Bender, Puckett, Hill, Williams and Bledsoe filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment on July 21, 2005.[3]  As grounds therefore, the Defendants assert that:

(1) Defendants Puckett and Bender should be dismissed because they have not been personally served with process;

(2) Defendants Hill and Bledsoe are not liable for the alleged unconstitutional acts of their subordinates;

(3) Plaintiff fails to state a claim upon which relief can be granted; and

(4) Defendants are immune from this action.

Plaintiff filed a Brief in Opposition to the Defendants Motion to Dismiss on August 25, 2005.  In his brief, plaintiff, in response to the defendants' assertion that he failed to state a claim for which relief may be granted, "re-states every allegation made in [the] original complaint of October 10, 2003."  Brief at 1.  Plaintiff also asserts that the defendants are not entitled to qualified immunity and cites several instances in which he perceives there are genuine issues of material fact still in dispute.  Attached to the Brief, are copies of plaintiffs' medical records and copies of his attempts at administrative remedy.

On October 3, 2005, the Court issued a Roseboro Notice[4] advising plaintiff of his right to

---

[3] Defendant Buckingham was not served, could not be located, and is not being represented by the United States Attorney's Office in these proceedings.  See  Defendants' Memorandum in Support of Motion to Dismiss at n. 1.

[4] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (requiring the court to inform a *pro se* plaintiff of his right to file counter-affidavits or other material in response to a motion for summary

file counter-affidavits or other material in response to the defendants motion. Plaintiff was informed of the requirements of Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. Plaintiff was informed that the failure to properly respond to the defendants' motion could result in the entry of summary judgment against him. Because a plaintiff's brief was filed prior to the issuance of the Roseboro Notice, the Court *sua sponte* granted plaintiff an additional thirty days to supplement his brief with the appropriate responsive material.

On October 24, 2005, plaintiff filed a notice with the Court that he "stands on the pleadings already submitted and does not wish to file a supplemental brief." (Doc. 44.) Thus, the defendants' motion is ripe for review.

**V.  Standard of Review**

A.  Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations.  Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990).  Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

---

judgment and advising him of the consequences of failing to do so).

B.  <u>Motion for Summary Judgment</u>

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. Rule 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  <u>Celotex</u> at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u>  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u> at  256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  <u>Id.</u> at 248.  Summary judgment is proper only "[w]here  the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  <u>Matsushita</u>, at 587

(citation omitted).

## VI. Analysis

### A. Defendants Buckingham, Puckett and Bender

Rule 4(m) of the Federal Rules of Civil Procedure states:

> Time Limit for Service: If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The 120-day time limitation was not meant to be enforced harshly,[5] rather, it was intended to be a useful tool for docket management. Id. at 1049. When a Plaintiff has failed to serve process upon a defendant within 120 days, the rule provides that the Court shall dismiss the action without prejudice as to that defendant or extend the time in which to effect service upon a showing of good cause.

To properly serve process in a Bivens case, the plaintiff is required to *personally* serve a copy of the summons and complaint upon each of the individual defendants. See Fed.R.Civ.P. 4(e); Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997) (noting that every court of appeals to consider the question has agreed that defendant federal officers in a Bivens suit must be served as an individual under Rule 4(e)); Robinson v. Turner, 15 F.3d 82, 84 (7th Cir. 1994); Despain v. Salt Lake Area Metor Gang Unit, 13 F.3d 1436, 1438 (10th cir. 1994); Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987). The failure to perfect individual service is fatal to a Bivens action. Deutsch v. U.S. Dept. of Justice, 881 F.Supp 49 (D. D.C.

---

[5] Floyd v. United States, 900 F.2d 1045, 1046 (7th Cir. 1990).

1995).  In addition to personal service, the plaintiff must also serve a copy of the summons and complaint upon the United States as set forth in Fed.R.Civ.P. 4(i).

A review of the file shows that plaintiff failed to service process upon defendants Buckingham, Puckett and Bender.  Plaintiff has not shown good cause for the failure to personally serve these defendants nor has he requested additional time to do so.  Therefore, this Court does not have personal jurisdiction over defendants Buckingham, Puckett, and Bender, and those defendants should be dismissed without prejudice.

B.  Defendants Hill and Bledsoe

In the motion to dismiss or for summary judgment, the defendants argue that plaintiff's Bivens claims against Hill and Bledsoe should be dismissed because *respondeat superior* is inapplicable in a Bivens case and because plaintiff cannot establish supervisory liability as to those defendants.

1.  Respondeat Superior

*Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case.  Rizzo v. Good, 423 U.S. 362 (1976).  Rather, in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, plaintiff names Hill and Bledsoe solely in their official capacities as the Warden and former Warden of FCI-Gilmer.  The only part either of these defendants played in

plaintiffs' job assignment or medical care was in denying plaintiffs' administrative remedies. This is not the type of personal involvement required to state a <u>Bivens</u> claim. <u>See</u> <u>Paige v. Kupec</u>, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Thus, because plaintiff fails to allege that either defendant Hill or Bledsoe was personally involved with a deprivation of his constitutional rights, they should be dismissed with prejudice.

2. <u>Supervisory Liability</u>

In <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a <u>Bivens</u> action if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." <u>Id.</u>

However, plaintiff cannot establish supervisory liability merely by showing that the subordinate was deliberately indifferent to his needs. <u>Id.</u> Instead, Plaintiff must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. <u>Id.</u> Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. <u>Id.</u>

Here, plaintiff has failed to make the appropriate showing of supervisory liability. Plaintiff does not allege that either defendant Hill or defendant Bledsoe was personally involved

with either establishing the course of his medical treatment or making his job assignments. Neither has plaintiff provided any evidence that either defendant tacitly authorized or was indifferent to any alleged violation of his constitutional rights. Moreover, with regard to plaintiffs' medical claims, defendants Hill and Bledsoe were entitled to rely on the medical opinion of plaintiffs' treating physician in establishing the appropriate course of treatment. Thus, defendants Hill and Bledsoe should be dismissed with prejudice.

C.  Defendants Bunts, Masteller, and Williams

In the motion to dismiss or for summary judgment, the defendants argue that plaintiff's Bivens claim against defendant Bunts, Masteller, and Williams must be dismissed because plaintiff has failed to state a claim for which relief can be granted.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834

F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

1. Denial of Pain Medication for 11 Days

Although, the defendants concede that the denial of pain medication is sufficiently serious to meet the objective component of the test for deliberate indifference, the defendants argue that plaintiff's failure to show that his condition was not properly treated, is fatal to his claim. Memorandum (Doc. 36-2) at 10 (citing <u>Harden v. Green</u>, 27 Fed. Appx. 173, 178, 2001 WL 1464468 (4th Cir. Nov. 19, 2001) (finding that the objective element of the test for deliberate indifference also requires that the plaintiff prove that his serious medical need was not timely or properly treated)). However, the undersigned is not persuaded by this argument.

Plaintiffs' argument in this instance is that he was denied pain medication from June 10, 2003 to June 21, 2003, a period of 11 days. During that time, plaintiff asserts that he suffered excruciating pain. Plaintiff also asserts that he requested pain medication from the medical staff and that such medication was refused. The defendants motion and supporting affidavits do not refute that the plaintiff was in pain during this time, that the plaintiff requested pain medication during this time, or that the plaintiff was refused the requested medication during this time.[6] Moreover, the defendants provide absolutely no reason, let alone a medical one, for denying plaintiff pain medication. Therefore, the Court is hard-pressed to see how this decision constitutes "sound professional judgment" that should not be second-guessed or is a "question of medical judgment that is not subject to judicial review." Memorandum (Doc. 36-2) at 13 (citations omitted). It seems clear that an outright refusal to provide pain medication is exactly the type of action that the Eighth Amendment is designed to prohibit.

Accordingly, plaintiff has, at this point, sufficiently plead a claim of deliberate

---

[6] Although plaintiff's medical records show that he received a prescription for pain medication on June 16, 2003, plaintiff alleges that he did not actually receive any medication until June 21, 20003. This contention is also not disputed by the defendants.

indifference against defendants Masteller and Bunts for failing to provide him with timely medical care by refusing to provide plaintiff pain medication for eleven (11) days.

2. Low Bunk Pass

In this claim, plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs by failing to prescribe him a low bunk pass. Plaintiff alleges that the failure to issue him a lower bunk exacerbated his knee condition. However, the Court is not convinced that the failure to prescribe a low bunk pass rises to the level of a constitutional violation. Whether or not plaintiffs' condition required the issuance of a low bunk pass seems to describe nothing more than a medical assessment. And therefore, plaintiffs' claim alleges little more than a disagreement with the course of his treatment. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (finding that disagreement over the appropriate course of treatment do no state a constitutional claim). Moreover, even if the failure to issue a low bunk does rise to the level of a constitutional violation, the defendants are entitled to qualified immunity as to this claim.

In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court granted qualified immunity to officials in § 1983 actions by shielding state actors from liability based on discretionary acts executed during the performance of their official duties. In examining a claim of qualified immunity, the Court must first determine whether, based on the facts alleged, there has been a constitutional violation, and if so, whether that right was clearly establish at the time. Saucier v. Katz, 533 U.S. 194 (2001). If the Court finds that no constitutional right would have been violated on the facts alleged, the inquiry ends and plaintiff cannot prevail. McKinney v. Richland County Sheriff's Dept., 431 F.3d 415, 417 (4th Cir. 2005). However, if the violation of

a right is established, the court must then consider whether the right was sufficiently clear as to put the public official on notice that his conduct is clearly unlawful.  Saucier 533 U.S. at 201-202.  In other words, the Court must examine the caselaw, prior to the time of the alleged acts, to see if a reasonable officer would clearly believe that his or her conduct was unlawful in those particular circumstances.  Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).  In determining whether the right was clearly established, the court must look to the specific context of the case, not the broad general proposition.  McKinney, supra.  If the right was not clearly established, i.e., "it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he was then confronted with, the law affords immunity from suit."  Id. at 412-418.

In this case, the Court can find no Supreme Court or Fourth Circuit caselaw which suggests that the denial of a low bunk pass by medical personnel is a constitutional violation.  Therefore, the defendants are entitled to qualified immunity as to this claim.

3.  Plaintiff's Job CCS Job Assignment

With regard to his remaining claim against defendants Williams and Bunts, plaintiff asserts that he complained to Dr. Williams and defendant Bunts that he was placed in a job assignment that exceeded his medical restrictions.  Plaintiff asserts that Dr. Williams and defendant Bunts failure to enforce his medical restrictions is a violation of the Eighth Amendment.  I disagree.

Based on a plaintiff's pleadings, his medical condition was assessed by the medical staff and he was issued a medical restriction pass.  Plaintiff does not assert that Dr. Williams or defendant Bunts was in any way involved in the decision to place plaintiff in a "CCS" job

assignment.  Moreover, it seems unlikely that defendants Williams and Bunts, as medical personnel, would have had any authority to determine plaintiff's job assignment.  The most they could apparently do is issue a medical restriction pass, which they did.  However, the failure of others to  honor that pass, does not make either defendant Williams or defendant Bunts liable for the alleged violation.  Nor does their failure to "correct" the problem.  Plaintiff does not, and in all likelihood, cannot, show that it was within Dr. Williams or defendant Bunts authority to remove plaintiff from his job assignment.  Accordingly, because plaintiff has failed to show that defendants Bunts or Williams were personally responsible for his job assignment or that they participated in the failure to honor his medical restriction pass, plaintiff has failed to state a claim for which relief may be granted and this claim is due to be dismissed with prejudice.

## VII.  Recommendation

For the reasons set forth in this Order, it is recommended that the Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. 36) be GRANTED in part and DENIED in part.  First, it is recommended that plaintiffs' claims against defendants Hill and Bledsoe be dismissed with prejudice because plaintiff cannot establish personal or supervisory liability with regard to these defendants.  Second, it is recommended that plaintiffs' claim that he was denied a lower bunk pass be dismissed for the failure to state a claim, or alternately, on qualified immunity grounds.  Third, it recommended that plaintiff's claim that the defendants violated his right to be free from cruel and unusual punishment for assigning him to a job that exceeded his medical restriction be dismissed with prejudice for the failure to state a claim.  Finally, it is recommended that plaintiffs' claim that defendants Masteller and Bunts denied him pain medication for eleven (11) days proceed and a scheduling order be issued.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.[7]

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record.

Dated: January 31, 2006

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[7] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).