IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ABDUL-AZIZ RASHID MUHAMMAD
a/k/a WILLIAM BROWN,

     Plaintiff,

v.                                  CIVIL ACTION NO. 1:03CV228
                                      (Judge Keeley)

J. BUNTS, Health Services Administrator;
DAVID BUCKINGHAM, Nurse; E. MASTELLER, PA-C;
P. BENDER, PA-C; T. PUCKETT, PA-C;
J. D. HILL, Associate Warden of Programs;
K. M. WHITE, Regional Director;
G. STONE, Superintendent of Industry;
HARRELL WATTS, Administrator National Inmate
Appeals; B. A. BLEDSOE, Warden, FCI-Gilmer;
and DORIS WILLIAMS,

     Defendants.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

On October 27, 2003, plaintiff Abdul-Aziz Rashid Muhammad a/k/a William Anthony Brown ("Muhammad"), filed a pro se complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In his initial complaint, Muhammad alleged that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him adequate medical care and a lower bunk pass. Subsequently, he added additional defendants and claims, including but not limited, to an Eighth Amendment claim concerning his placement in a job assignment that was inconsistent with his medical restrictions.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

On July 21, 2005, the defendants filed a "Motion to Dismiss, or Alternatively, Motion for Summary Judgment." On October 23, 2005, the Court referred this motion to Magistrate Judge John S. Kaull in accordance with Rule 83.02 of the Local Rules of Prisoner Litgation Procedure. On January 31, 2006, Magistrate Judge Kaull issued Report and Recommendation, recommending that the Court grant-in-part and deny-in-part the defendants' "Motion to Dismiss, or Alternatively, Motion for Summary Judgment."

For the following reasons, the Court **AFFIRMS-IN-PART** and **REJECTS-IN-PART** the Magistrate Judge's recommendations.

## I. BACKGROUND

### A. Muhammad's Claims

On June 10, 2003, Muhammad arrived at Gilmer Federal Correctional Institution ("FCI-Gilmer") after being transferred from the McKean Federal Correctional Institution ("FCI-McKean"). Muhammad injured his right knee in a fall while incarcerated at FCI-McKean and was transferred to FCI-Gilmer before he could be seen by medical staff at FCI-McKean. Muhammad alleged that, because of his knee injury, he had requested pain medication and a lower bunk pass during his initial medical screening with defendant Pamela Bender ("Bender") at FCI-Gilmer. Muhammad stated that, in

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

response to his requests, Bender had informed him she could not grant him a low bunk pass until his injuries were assessed by the medical department and until the Utilization Review Committee ("URC") approved his request for a lower bunk. Because he was not satisfied with Bender's response, Bender called defendant Elizabeth Masteller ("Masteller") for a consultation. Muhammad stated that Masteller concurred with Bender's assessment.

Muhammad alleged that he was not seen by a medical provider until June 19, 2003 and did not receive any pain medication until June 21, 2003. He further stated that he returned to the Health Services Unit on June 26, 2003, complaining that the medication he had been prescribed was not effective, but only received a lab test and x-ray of his knee during that visit. He also claimed that, on the next day, he returned to the Health Services Unit, seeking a change in his pain medication and a lower bunk pass, and that the medical provider finally prescribed a new pain medication and granted him a temporary lower bunk pass. On July 3, 2003, Muhammad was informed that his x-rays showed that there were "degenerative changes of the patella."

Muhammad also alleged continued lack of care for his complaints of pain resulting from his injured knee throughout August and September, 2003. Furthermore, Muhammad asserted, that

3

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

since being transferred to United States Penitentiary Big Sandy ("USP-Big Sandy"), he has received scientific testing which establishes that he not only suffered initial pain and suffering from the alleged lack of medical attention at FCI-Gilmer, but also suffered other residual injuries to his left knee and foot. Accordingly, he asserted that the defendants were deliberately indifferent to his serious medical needs. Muhammad also asserted that the actions of the defendants were part of a conspiracy, were retaliatory and discriminatory, and denied him due process and equal protection.

In his amended complaint, Muhammad named several staff members of FCI-McKean and Dr. Doris Williams ("Williams") from FCI-Gilmer as additional defendants. He asserted that the additional defendants were also deliberately indifferent to his serious medical needs because they failed to timely inform him that he tested positive for the Hepatitis-C virus and failed to appropriately treat him for that condition. Muhammad further alleged that several of the original defendants were also involved in denying him appropriate treatment for his Hepatitis-C condition.

In supplemental pleadings, Muhammad alleged that, in December, 2003, he was removed from his job as a unit orderly and assigned a "CCS" job which consists of working outside, picking up trash,

4

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

shoveling snow, and sweeping. Muhammad asserted that the reassignment was done in spite of his medical restrictions and in retaliation for filing a grievance and for filing this suit.

## B. Procedural History

On August 4, 2004, Magistrate Judge Kaull issued a report and recommendation with respect to Muhammad's supplemental pleadings, recommending that the Court dismiss the staff members of FCI-McKean named in Muhammad's amended complaint, but permit allegations against defendant Williams as well as Muhammad's additional claims against the original defendants to move forward. On August 20, 2004, the Court adopted these recommendations; therefore, defendant Williams and Muhammad's Hepatitis-C claims were added to this matter.

On January 10, 2005, Magistrate Judge Kaull conducted a preliminary review of this matter pursuant to 28 U.S.C. §§1915(e) and 1915A and issued a report and recommendation as to the viability of Muhammad's claims. He recommended that Muhammad's complaint be dismissed with prejudice, except for his claims that: (1) defendants Bender, Bunts, Buckingham, Masteller, and Puckett denied his pain medication for 11 days; (2) defendants Bender, Bunts, Buckingham, Masteller, and Puckett denied him a lower bunk pass; and (3) defendants Bunts, Bledsoe, Hill and Williams were

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

deliberately indifferent to his serious medical needs by allowing his assignment to a work detail that exceeded his medical restrictions . Accordingly, he recommended that defendants Bender, Bledsoe, Bunts, Buckingham, Hill, Masteller, Puckett, and Wiliams be served with Muhammad's complaint and defendants White, Stone and Watts be dismissed.

On March 30, 2005, the Court affirmed-in-part and rejected-in-part Magistrate Judge Kaull's January 10th report and recommendation. The Court dismissed with prejudice Muhammad's equal protection claims, his claims under 28 U.S.C. §1367, 18 U.S.C. §4042, 18 U.S.C. §§241, 242, 245 and 1001, his retaliation claims, his conspiracy claims, his supervisory liability claims, and his Eighth Amendment claims with respect to his knee, lower back and rib condition. It also dismissed with prejudice Muhammad's official capacity claims against all defendants and dismissed defendants White, Stone and Watts. In addition to these claims, the Court dismissed without prejudice Muhammad's Eighth Amendment claim concerning his Hepatitis-C condition because he had failed to exhaust his administrative remedies prior to filing this lawsuit. Accordingly, it directed the Clerk to serve the remaining claims

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

upon defendants Bender, Bledsoe, Bunts, Buckingham, Hill,

Masteller, Puckett and Williams.[1]

## C. Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment

In response to Muhammad's claims, defendants Bunts, Masteller,

Bender, Puckett, Hill, Williams and Bledsoe filed a "Motion to

Dismiss, or Alternatively, Motion for Summary Judgment" on July 21,

2005. As grounds for their motion, the defendants asserted that:

> (1) defendants Puckett and Bender should be
> dismissed because they have not been
> personally served with process;
> (2) defendants Hill and Bledsoe are not liable
> for the alleged unconstitutional actions of
> subordinates;
> (3) Muhammad failed to state a claim upon
> which relief could be granted; and
> (4) defendants are each immune from Muhammad's
> claims.

---

[1] On April 27, 2005, Muhammad filed a motion for reconsideration, challenging the
rulings made by the Court in its March 30th Order. By Order dated February 23,
2006, the Court denied Muhammad's motion for reconsideration, stating that
Muhammad primarily restated the legal arguments that he made in his objections
to the Magistrate Judge's recommendations which were addressed by the Court in
its March 30th Order. On March 13, 2006, Muhammad filed a "Motion Objecting To
Order Denying Motion for Reconsideration By Judge Keeley, Dated February 23,
2006," stating that he wanted to preserve his right to appeal the decision, if
necessary, at the end of the district court's proceedings. Muhammad stated that,
in his motion for reconsideration, he had established that he had exhausted his
administrative remedies, not once but twice, on his Hepatitis C claim. In its
February 23rd Order, the Court stated that Muhammad asserted that he had
exhausted his administrative remedies in December, 2003. It, however, concluded
that Muhammad's claims must have been exhausted prior to filing suit on October
27, 2003. Accordingly, to the extent that Muhammad seeks relief from the Court's
February 23rd Order, the Court **DENIES** Muhammad's March 13th motion (dkt no. 56).

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

D.   **The   Magistrate   Judge's   January   31,   2006 Report and
     Recommendation**

   1.   **Defendants David Buckingham, Teresa Puckett and Pamela
        Bender**

Magistrate Judge Kaull concluded that Muhammad had failed to:
(1) perfect service of process upon defendants Buckingham, Puckett,
Bender; (2) show good cause for the failure to personally serve
these defendants; or (3) request additional time in which to
perfect service. Therefore, he recommended that the defendants'
dispositive motion be granted with respect to Buckingham, Puckett,
and Bender and that they be dismissed without prejudice because the
Court lacked personal jurisdiction over them.

   2.   **Defendants J.D. Hill and B.A. Bledsoe**

Magistrate Judge Kaull stated that Muhammad named defendants
Hill and Bledsoe solely in their official capacities as the Warden
and former Warden of FCI-Gilmer. He, therefore, concluded that
Muhammad had failed to allege that either Hill or Bledsoe was
personally involved with any alleged deprivation of his
constitutional rights.   He further concluded that Muhammad had
failed to make the appropriate showing of supervisory liability
because he had not alleged that either defendant Hill or defendant
Bledsoe was personally involved with either establishing the course

8

of his medical treatment or making his job assignments. Moreover, Magistrate Judge Kaull concluded that Bledsoe and Hill were entitled to rely on the medical opinions of Muhammad's treating physician in establishing the course of treatment. Therefore, he recommended that the defendants' motion be granted with respect to defendants Hill and Bledsoe and that they be dismissed with prejudice because of Muhammad's failure to establish a sufficient claim against them.

### 3. Defendants Bunts, Masteller and Williams

With respect to Muhammad's claim that the defendants had denied him pain medication from June 10, 2003 to June 21, 2003, Magistrate Judge Kaull concluded that the defendants' motion and supporting affidavits did not refute that Muhammad was in pain during that eleven-day period, that Muhammad had requested pain medication during that period or that Muhammad had been refused medication during that period.

Although Muhammad's medical records demonstrated that he had received a prescription for Motrin on June 16, 2003, Magistrate Judge Kaull noted that Muhammad had alleged that he had not actually received any medication until June 21, 2003. He further noted that the defendants had failed to challenge this contention

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

and had failed to provide a medical reason for denying Muhammad pain medication. Accordingly, he concluded that Muhammad's claim of deliberate indifference against defendants Masteller and Bunts for failing to provide him with timely medical care by refusing to provide pain medication for eleven days survived their motion and recommended that it proceed to discovery.

Concerning Muhammad's claim that he had been denied a low bunk pass, the Magistrate Judge stated that no case from either the Supreme Court or Fourth Circuit provided a legal basis for Muhammad's claim that the denial of a low bunk pass by medical personnel is a constitutional violation. He, therefore, recommended that the defendants' motion be granted with respect to Muhammad's claim concerning the denial of a low bunk pass and that it be dismissed with prejudice.

Finally, regarding Muhammad's claim that he had been placed in a job assignment that exceeded his medical restrictions, the Magistrate Judge stated that, while the medical staff had issued Muhammad a medical restriction pass, the evidence did not establish that the medical staff had been involved in Muhammad's actual job placement. Moreover, Muhammad had failed to show that defendants Williams or Bunts had the authority to remove him from his job assignment. Accordingly, the Magistrate Judge concluded that the

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

failure of others to honor the medical restriction pass did not make either Williams or Bunts liable for the alleged violation. Therefore, he recommended that the defendants' motion be granted with respect to Muhammad's job placement claim against Williams and Bunts, and that it be dismissed with prejudice.

**E.    Defendants Bunts and Masteller's Objections**

On February 15, 2006, defendants Bunts and Masteller objected to Magistrate Judge Kaull's recommendations concerning Muhammad's claim of denial of pain medication.[2] In support of their objections, they produced a Second Declaration of Janet Bunts and a copy of Muhammad's medical records for June 10, 2003 through June 21, 2003. They asserted Muhammad's claim that he had been denied pain medication for 11 days was simply untrue because the medical records establish that Muhammad was prescribed pain medication at his sick-call evaluation on June 16, 2003 and again at his scheduled appointment on June 19, 2003.

Furthermore, defendants Bunts and Masteller stated that, despite Muhammad's characterization of his pain as excruciating, his medical records show that, upon his arrival at FCI-Gilmer on

---

[2] In their objections, counsel for the defendants stated that the other defendants were fully satisfied with Magistrate Judge Kaull's findings and recommendations and requested that the Court adopt his recommendations concerning all other claims and defendants.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

June 10, 2003, Muhammad reported no medical complaints and rated his pain as a 0 on a scale of 0 to 10. Furthermore, they asserted that his medical records demonstrate that he rated his pain as a 4 on June 19, 2003.

Defendants Bunts and Masteller also asserted that, once Muhammad brought his pain to the attention of medical staff on June 11, 2003, he was evaluated for such pain. They stated that the medical records show that Muhammad's first examination on June 11, 2003 revealed no significant findings; his second examination on June 16, 2003 revealed that Muhammad was able to ambulate and bend his knee without difficulty; and his third examination on June 19, 2003 revealed Muhammad was able to ambulate with full weight bearing and had a normal range of motion with no swelling of the knee.

Accordingly, defendants Bunts and Masteller argued that Muhammad merely disagrees with the defendants' decision on July 11, 2003 to not prescribe pain medication, but instead to schedule a follow-up appointment with a medical provider. They, therefore, asserted that their decision to not provide pain medication does not constitute deliberate indifference, and, at most, would rise to the level of negligence. Accordingly, they argued that Muhammad had

12

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

failed to establish a claim of deliberate indifference concerning denial of pain medication.

**F. Muhammad's Objections**

Without seeking leave from the Court, Muhammad filed untimely objections[3] to the Magistrate Judge's Report and Recommendation on February 23, 2006. Although the substance of these objections was sometimes difficult to discern,[4] it appears that Muhammad was objecting to the Magistrate Judge's recommendations to dismiss defendants Buckingham, Puckett, Bender, Hill, and Bledsoe and his Eighth Amendment claims concerning the denial of his request for a lower bunk pass and his placement in a job assignment that was inconsistent with his medical restrictions.

---

[3] Rule 72(b) of the Federal Rules of Civil Procedure states that, within 10 days after being served with a report and recommendation, a party may file specific written objections to the proposed findings and recommendations of a Magistrate Judge. Magistrate Judge Kaull's Report and Recommendation was dated January 31, 2006, but was not filed by the Clerk until February 1, 2006. Accordingly, with additional time provided for mailing, the Muhammad's objections were due to the Court by no later than February 15, 2006. Muhammad did not file his objections until February 23, 2006, eight days after the objection deadline.

[4] Muhammad's objections constituted a thirty-five (35) page type-written document that objected not only to the Magistrate Judge's January 31st Report and Recommendation, but also the Magistrate Judge's January 27, 2006 Order, denying several motions filed by Muhammad after the defendants' dispositive motion, including but not limited to a "Motion for Permission to File and Have Answered Interrogatories and Motion for Production of Documents" and a "Motion for Subpoenas." With respect to Muhammad's objections to the Magistrate Judge's January 27, 2006 Order, the Court **OVERRULES** those objections **AS MOOT** in light of the Court's current ruling with respect to the Magistrate Judge's January 31st report and recommendation.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

Muhammad also opposed the Magistrate Judge's recommendation that defendants Buckingham, Puckett and Bender be dismissed for failure to perfect service of process because he contends that as a pro se prisoner, he must rely on the U.S. Marshals to perfect service on each defendant. He stated that these individuals are no longer at FCI-Gilmer and that he just recently located these defendants through the help of other prison officials and a family friend. Accordingly, he requested that the Court serve his complaint upon these defendants with the three summons that he enclosed with his objections.

Muhammad also opposed Magistrate Judge Kaull's decision to dismiss defendants Bledsoe and Hill because he claims they had a duty to ensure that the regulations/statute and policies governing medical care/treatment of the prisoners in their care, custody and control were enforced. He asserts that their failure to meet this duty when he personally made them aware of the problem, both verbally and by grievance, renders them liable in their supervisory capacity.

Finally, Muhammad opposed the Magistrate Judge's recommendation that defendants Bunts, Williams and Masteller be dismissed for failure to state a claim regarding the denial of his request for a low bunk pass and his assignment to a job that

14

allegedly exceeded his medical restrictions. First, he asserted that defendants Bunts and Masteller were not entitled to qualified immunity with respect to the lower bunk pass denial because it was denied for retaliatory reasons. He also stated that defendants Bunts and Williams had authority to place him on medical convalescence and/or medical restriction, and they, therefore, are personally liable for his job placement. Accordingly, Muhammad argued that all of his claims should proceed because issues of material fact exist on which discovery is needed.

## G. Muhammad's Opposition to Defendants' Objections

Without seeking leave from the Court, Muhammad also filed an untimely response[5] to the defendants' objections on March 8, 2006. He asserted that, in their objections, the defendants ask the Court to consider evidence that counsel for the defendants knew or should have known when filing their motion. Accordingly, he requested that the Court disregard any new affidavits submitted by defendants Bunts and Masteller in support of their objections. Furthermore, Muhammad asserted that the intake screening record produced by the

---

[5] Fed. R. Civ. P. 72(b) states: "A party may respond to another party's objections within 10 days after being served with a copy thereof." The defendants filed their objections on February 15, 2006. With additional days provided for mailing, Muhammad's opposition was due no later than February 28, 2006. Muhammad did not file his opposition on March 8, 2006, eight days after the response deadline.

15

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

defendants was "doctored" because his signature was forged, and he denied that he had ever represented to the defendants that he was not experiencing pain during his intake screening on June 10, 2003.

Muhammad stated that the defendants were deliberately indifferent toward his "serious medical needs" because he was completely denied any form of medical treatment by them from June 10, 2003 through June 19, 2003, and did not receive any pain medication until June 21, 2003. In support of his allegations, Muhammad attached an "FCI/FPC Gilmer Inmate Medical Triage Sign-Up Sheet," which demonstrates that he reported a "knee problem" and "need for medication" on June 11, 2003. He also attached an affidavit executed by him and several affidavits executed by fellow inmates under the penalty of perjury, which he had originally submitted as exhibits to his complaint, stating that he was completely denied medical treatment on June 11, 2003 and June 16, 2003.

**H. Defendants' Reply to Muhammad's Opposition**

The defendants replied to Muhammad's response on March 13, 2006[6], asserting that they had filed their dispositive motion based

---

[6] Without leave of Court, Muhammad filed an untimely "Objection To Defendants' Motion Titled 'Reply To Plaintiff's Response To The Defendants' Objections To the Magistrate's Report" on March 30, 2006. Muhammad restated the arguments that he had already made in his response to the defendants' objections to the magistrate

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

on the understanding that Muhammad's challenge was a general
challenge of his overall medical treatment, and, therefore, they
had submitted a general summary of the medical treatment provided
to Muhammad at FCI-Gilmer. They stated that, in his Report and
Recommendation, Magistrate Judge Kaull identified the relevant time
period as June 10, 2003 through June 21, 2003. Accordingly, they
had submitted a more detailed summary of Muhammad's medical
treatment during this very specific time period in support of their
objections. The defendants stated that the Court may consider this
additional information pursuant to Fed. R. Civ. P. 72(b) when
reviewing the Magistrate Judge's recommendations in light of their
objections. Moreover, they asserted that Muhammad's assertion that
medical records which they had produced in support of their
objections had been falsified was conclusory, unsupported by any
facts and insufficient to create a genuine issue for trial.

## II. STANDARD OF REVIEW

The district court judge "shall make a <u>de novo</u> determination
of those portions of the [Magistrate Judge's] report or specified
proposed findings or recommendations to which objection is made."
28 U.S.C. § 636(b)(1); <u>See</u> <u>also</u> Fed. R. Civ. P. 72(b); <u>E.g.</u>,

---

judge's recommendations. The Court has previously summarized those objections in
this Order, thus there is no need to restate Muhammad's contentions.

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

Fluellen v. Epstein, 2003 U.S. Dist. LEXIS 23562 (D. S.C. 2003)
aff'd 84 Fed. Appx. 299 (4th Cir. 2003). A district court may
accept, reject, or modify the Magistrate Judge's recommendations,
receive further evidence, or recommit the matter to the Magistrate
Judge.  Id.

When ruling on a motion to dismiss a claim, a district court
must assume all facts well-pleaded by the petitioner to be true.
Walker v. True, 399 F.3d 315, 319 (4th Cir. 2005)(citing Rouse v.
Lee, 339 F.3d 238, 248 n.8 (4th Cir. 2003)).  Further, a motion to
dismiss for failure to state a claim may only be granted as a
matter of law "if it is clear that no relief could be granted under
any set of facts that could be proved consistent with the
allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).
When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied
by affidavits, exhibits, and other documents to be considered by
the Court, the motion will be construed as a motion for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure.

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

moving party will not prevent the entry of summary judgment. Anderson, 477 U.S. at 248.

## III.  ANALYSIS

### A. Defendants Buckingham, Puckett and Bender

According to 28 U.S.C. §1915(d), officers of the court shall issue and serve all process, and perform all duties in cases where the plaintiff is permitted to proceed in forma pauperis. Furthermore, Rule 4(c)(2)(B)(i) of the Federal Rules of Civil Procedure recognizes that, at the request of the party, a court may direct service be effected by a United States Marshal, Deputy United States Marshal or other person or officer specifically appointed by the court for that purpose. Rule 4 states that this appointment must be made when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. §1915. Moreover, Rule 83.03 of the Local Rules for Prison Litigation Procedure states:

> If the plaintiff has been granted leave to proceed without prepayment of fees, the Clerk will complete and issue a summons form for each defendant, complete the Form USM 285 -- Process Receipt and Return -- and forward these documents, along with copies of the complaint and order directing service, to the United States Marshals Service. If the plaintiff has not been granted leave to proceed without prepayment of fees, the Court

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

> will enter an order directing the plaintiff to
> serve the complaint on each defendant.

Accordingly, an incarcerated pro se plaintiff proceeding in forma pauperis may rely on the U.S. Marshals or the party appointed by the Court to serve each defendant in his case and should not be penalized for the failure of the Marshal's Service or the Court Clerk to properly effect service of process, where such failure is through no fault of the prisoner. See generally Welch v. Folsom, 925 F.2d 666, 669-670 (3rd Cir. 1991); Puett v. Blandford, 895 F.2d 630, 635 (9th Cir. 1990); Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987); Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2nd Cir. 1986).

Magistrate Judge Kaull granted Muhammad's application to proceed in forma pauperis on August 11, 2004. Accordingly, the Clerk issued summons to defendants Buckingham, Puckett and Bender on March 30, 2005, but these summons were returned to the Clerk as undeliverable on April 4, 2005. The Clerk made no further effort to serve these defendants and did not provide any notice to Muhammad that service of process had not been perfected on these defendants.

Muhammad, therefore, did not have notice of the deficiency in his service of process until July 21, 2005 when the defendants filed their motion asserting failure to perfect service of process

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

within the requisite 120-day time period required by Fed. R. Civ. P. 4(m). In his brief in opposition of the defendants' motion, Muhammad stated that he had been unable to locate defendants Buckingham, Bender, and Puckett because they were no longer employed at FCI-Gilmer and requested that the U.S. Marshals locate and serve these defendants. Furthermore, in his objections to the Magistrate Judge's January 31st Report and Recommendation, Muhammad stated that, through other officials and a family friend, he had recently located the addresses for defendants Buckingham, Bender, and Puckett. Accordingly, he provided summonses executed by him with the defendants' new addresses to the Clerk to be served.

Although the Magistrate Judges's recommendation concerning this issue is persuasive, Muhammad should not be penalized for the Clerk's failure to perfect service where such failure is through no fault of his. Accordingly, the Court **REJECTS** the Magistrate Judge's recommendation, **DENIES** the defendants' motion with respect to the dismissal of defendants Buckingham, Puckett and Bender and **DIRECTS** the Clerk to serve these defendants with the summonses provided by Muhammad.

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

## B. Defendants Hill and Bledsoe

In order to establish personal liability against a defendant in a Bivens action, the defendant must be personally involved in the alleged wrong(s) and liability cannot be predicated solely under *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Rather, in a Bivens case, the plaintiff must specify the acts taken by each defendant that violate his constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994).

Muhammad fails to establish that either defendant Hill or defendant Bledsoe personally assigned him a job exceeding his medical restrictions.[7] Rather he asserts that they are responsible for their staff and their staff's actions. The record clearly demonstrates that the only part these defendants played in his job assignment was in denying Muhammad's administrative remedies. Therefore, Muhammad has failed to establish the type of personal

---

[7] In his complaint, Muhammad also alleged that defendants Hill and Bledsoe were deliberately indifferent to his serious medical needs by denying his administrative grievances. In its March 30th Order, the Court concluded that defendants Hill and Bledsoe clearly relied on the opinions of Muhammad's health care providers, and Muhammad failed to allege that such reliance was either unreasonable or inherently reckless. It further concluded that Muhammad had otherwise failed to sufficiently allege that the defendants' knowledge and actions satisfied the elements of supervisory liability. Therefore, it dismissed Muhammad's supervisory claims concerning his medical care. The Court, however, adopted the Magistrate Judge's recommendation that Muhammad's Eighth Amendment claim concerning his job assignment against defendants not be summarily dismissed. Accordingly, the Eighth Amendment job assignment claim is the only remaining claim in this action against defendants Hill and Bledsoe.

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

involvement on the part of defendants Bledsoe and Hill that is required to state a Bivens claim against them.

Muhammad appears to be suing defendants Bledsoe and Hill in their supervisory capacities. A supervisor who is not personally involved in an alleged wrongdoing may be found liable if (1) the subordinate acted pursuant to an official policy or custom for which the supervisor is responsible; or (2) "the prisoners face a pervasive and unreasonable risk of harm from some specified source [and] the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id.; Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). A supervisor's "deliberate indifference" may be established by demonstrating his "continued inaction in the face of documented widespread abuses." Shaw, 13 F.3d at 799.

Muhammad accuses defendants Hill and Bledsoe of neglecting their duty to provide a safe environment for inmates by failing to ensure that he was held free from retaliation. He asserted that the change of his work assignment was in retaliation for filing the instant lawsuit. The Court dismissed Muhammad's retaliation claim in its March 30th Order, concluding that Muhammad provided no evidence of documented, widespread abuse by prison officials in knowingly or intentionally assigning inmates to a work detail that

they knew would aggravate the inmates' serious medical condition in retaliation for filing grievances or lawsuits. Therefore, Muhammad's claims of retaliation are meritless. Without such evidence, Miller cannot demonstrate that defendants Hill and Bledsoe acted with "deliberate indifference" as supervisors. Accordingly, the Court **AFFIRMS** the Magistrate Judge's recommendation and **DISMISSES WITH PREJUDICE** defendants Hill and Bledsoe.

**C. Eighth Amendment Claims Against Bunts, Masteller, and Williams**

To state a valid Eighth Amendment claim for cruel and unusual punishment based on inadequate medical treatment, a petitioner must demonstrate that the respondents acted with deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (the mere fact that a prisoner disagrees with his course of treatment does not give rise to a valid claim). This standard subjects prison officials to liability only when they are subjectively aware that the inmate faces a substantial risk of harm, and they fail to take reasonable measures to abate that risk. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Wilson, 501 U.S. at 298 ("Allegations of 'inadvertent failure to provide medical

25

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

care,' or of a 'negligent . . . diagnosis,' simply fail to establish the requisite culpable state of mind").

### 1. Denial of Pain Medication For Eleven Days

Magistrate Judge Kaull stated that the defendants' alleged refusal to provide pain medication to Muhammad is exactly the type of action that the Eighth Amendment is designed to prohibit. The defendants, however, assert that they did not completely deny Muhammad pain medication and that he did receive pain medication on June 16, 2003. Furthermore, they assert that they made a medical decision to schedule a follow-up appointment with a medical provider based on their evaluation of Muhammad's condition on June 11, 2003 rather than initially prescribing pain medication.

In support of their objections to the Magistrate Judge's Report and Recommendation, Bunts and Masteller produced Muhammad's medical records for June 10, 2003 through June 27, 2003. Although these medical records were not part of the record before the Magistrate Judge, the Court may consider such records in making a de novo determination of those portions of the Magistrate Judge's

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

recommendations to which Muhammad and the defendants have objected.[8]

First, the defendants produced a "Chronological Record of Medical Care" dated June 10, 2003 and asserted that the document establishes that Muhammad had represented having no medical complaints and rated his pain level as a 0 on a pain scale from 0 to 10 at the time of his initial screening. Although he contends that this document has been "doctored," Muhammad fails to provide any evidence supporting this contention beyond his conclusory allegations.

Despite the lack of any medical records for June 11, 2003, however, the defendants contend that Muhammad reported to the Health Services Unit during sick call on that day. Muhammad's visit is not reflected in his medical records, according to the defendants, because, at that time, they did not maintain triage forms for sick-call visits in an inmate's medical file. In a declaration provided under penalty of perjury, defendant Bunts states that Muhammad was examined for complaints of knee pain on

---

[8] Fed. R. Civ. P. 72(b) states: "The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the Magistrate Judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence or recommit the matter to the Magistrate Judge with instructions."

June 11, 2003, but that the examination revealed no significant findings; thus, an appointment with a provider was scheduled for Muhammad on June 19, 2003.

Muhammad, however, produced an "FCI/FPC Gilmer Inmate Medical Triage Sign-Up Sheet," indicating that, on June 11, 2003, he reported a need for a bottom bunk pass, soft shoe pass and medication for a knee problem. The triage sheet further indicated that he had been experiencing this problem for five days. Muhammad also produced an affidavit executed by him on February 6, 2004 under penalty of perjury, stating that he reported to the Health Services Unit for sick call on June 11, 2003 and presented this triage slip to the nurse.

Muhammad further stated in his affidavit that he attempted to explain to the nurse that he thought he "had torn something in his knee due to an injury" and was in "severe and extreme pain." He also stated that he had an "obvious" and "immediate" problem because he could not bend his knee or walk without a limp. He stated, however, that defendant Bunts instructed him to leave before he was examined or prescribed any pain medication. In addition to his affidavit, Muhammad produced several affidavits from fellow inmates, stating that they had been present in the Health Services Unit on June 11, 2003 when defendant Bunts denied

28

Muhammad treatment and had him removed from the Health Services
Unit by an officer.

The parties agree that Muhammad returned to the Health
Services Unit on June 16, 2003, but disagree about what happened on
that visit. The defendants assert that the medical records
demonstrate that Muhammad returned to the Health Services Unit
during sick call and was examined again by the nurse and prescribed
Motrin 400mg. They produced an "FCI-Gilmer Medication Log," which
they claim shows that a prescription for Ibuprofen 400 mg was
filled by their pharmacy on June 16, 2003 for Muhammad. They,
however, stated that whether Muhammad reported to pick up his
prescription is unknown.

In his affidavit, Muhammad stated that, on June 16, 2003, he
returned to Health Services and requested a lower bunk pass and
pain medication, but was still refused an examination or pain
medication. He stated further in his affidavit that the defendants
would not return his knee braces that had been previously
prescribed by a physician at FCI-McKean for his chronic knee
problem.

Finally, defendants Bunts and Masteller state that the medical
records show that the physician's assistant examined Muhammad on
June 19, 2003. They assert that the medical records show that he

29

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

complained of right knee pain secondary to an injury and reported a pain level of 4 on a scale of 0 to 10. Accordingly, they assert that the physician's assistant ordered an x-ray of Muhammad's knee and prescribed Salsalate for pain. They claim that his prescription was filled on June 20, 2003 by their pharmacy and that the x-ray was taken of Muhammad's knee on June 26, 2003.[9] Muhammad, however, alleges that he did not receive any pain medication until June 21, 2003.

### a. Serious Medical Need

In order to establish an Eighth Amendment violation, a prisoner must first prove that, objectively, the deprivation of a basis human need was sufficiently serious. Wilson v. Seiter, 501 U.S. 294, 298 (1991). A medical need is "serious" if a physician has diagnosed the condition as needing treatment, the need for treatment is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or "a delay in treatment causes a life-long handicap or permanent loss." Myers v. Milbert, 281 F.Supp.2d 859, 863 (4th Cir. 2003) (citations omitted). Further, "the presence of a medical condition that

---

[9] The defendants received the x-ray report from Stonewall Jackson Memorial Hospital on July 3, 2003. The x-ray report indicated degenerative changes of the patella without evidence of fracture or dislocation.

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

significantly affects an individual's daily activities, or the existence of chronic and substantial pain are [also] examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Tech., Inc., v. Miller, 104 F.3d 1133 (9th Cir. 1997).

The defendants assert that Muhammad reported experiencing no to at most a very low level of pain immediately following his arrival at FCI-Gilmer, and that Muhammad's initial examination revealed no significant findings. Muhammad, however, asserts that he reported "severe and extreme" pain, and that he could not bend his knee or walk without a limp. Clearly, questions of material fact exists concerning the seriousness of Muhammad's knee injury.

### b. Deliberate Indifference

Prison personnel show deliberate indifference to an inmate's serious medical needs by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to medical care. Estelle v. Gamble, 429 U.S. at 97. Courts distinguish cases that involve a complete denial of medical attention from cases involving a claim of inadequate medical attention. Westlake v. Lucas, 537 F.2d 857, 860-61 (6th Cir. 1976). "Where a prisoner has received some medical attention and the

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

dispute is over the adequacy of the treatment, federal courts are
generally reluctant to second guess medical judgments and to
constitutionalize claims which sound in tort law." Id. at 860.

Defendants Bunts and Masteller assert that Muhammad's claim
merely questions the adequacy of the particular course of treatment
prescribed by them for his knee pain. They, however, have failed to
produce any medical records for the June 11, 2003 visit, despite
stating that Muhammad is merely attacking the medical decision made
during that appointment to not prescribe pain medication. Based on
Bunts' declaration, the defendants claim that Muhammad's June 11,
2003 examination revealed no significant findings, and, therefore,
they had a reasonable basis on which to rely for their decision to
schedule an appointment for Muhammad with a medical provider
instead of prescribing pain medication. They further assert that,
if this decision was incorrect, at most it amounts to mere
negligence and not deliberate indifference to his medical needs.
Based on his affidavit and the affidavits of other inmates,
however, Muhammad claims he was denied medical attention on June
11, 2006. Clearly, the Court has before it competing affidavits
concerning the medical treatment given to Muhammad.

Muhammad's complaint makes clear that he is alleging that the
defendants totally ignored his complaints of "severe and extreme"

32

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

pain and completely denied him any medical attention for several days. In his affidavit, Muhammad asserts that the defendants failed to examine him for his complaints of pain until June 19, 2003. Accordingly, Muhammad states that the examinations on which the defendants base their assertion that they had a medical basis for scheduling a follow-up appointment with a provider instead of prescribing pain medication did not in fact occur. Therefore, he is not alleging a dissatisfaction or a disagreement with the course of treatment recommended by the defendants, but instead that they failed to take any course of treatment. Accordingly, a question of material fact exists concerning the deliberate indifference element of Muhammad's Eighth Amendment claim.

### c. Substantial Harm

A prisoner must further establish that any delay in medical attention resulted in a substantial harm. Estelle v. Gamble, 427 U.S. at 106. Muhammad alleges that, since being transferred to USP-Big Sandy, he has received testing that establishes not only that he suffered initial pain and suffering from the alleged lack of medical attention at FCI-Gilmer, but also suffered other residual injuries to his left knee and foot. The defendants failed to provide evidence disputing this allegation. Accordingly, with respect to this element, when Muhammad's allegation is construed in

the light most favorable to him, it follows that he has alleged sufficient information to establish that substantial harm resulted from the alleged delay in treatment of his knee injury.

Because issues of material fact exist as to the elements of Muhammad's deliberate indifference claim, the Court **AFFIRMS** the Magistrate Judge's recommendation and **DENIES** the defendants' motion with respect to Muhammad's Eighth Amendment claim concerning the denial of pain medication.

### 2. Low Bunk Pass

Muhammad alleges that the defendants violated the Eighth Amendment by failing to prescribe a low bunk pass for him. The United States Supreme Court has provided that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). The Court agrees with Magistrate Judge Kaull that the defendants are entitled to qualified immunity as to the claim

## ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

that they were deliberately indifferent to Muhammad's serious medical needs by failing to provide him a low bunk pass.[10]

In order to determine whether an officer is entitled to qualified immunity, a court must first determine "whether a constitutional right would have been violated on the facts alleged." Saucier v. Katz, 533 U.S. 194, 200 (2001). If the facts, viewed in the light most favorable to the plaintiff, "do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail." Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004).

In this case, the Court need not go beyond the first step of the Saucier analysis. Magistrate Judge Kaull stated that he could not find a United States Supreme Court or Fourth Circuit Court of Appeals case suggesting that denial of a low bunk pass by medical personnel rises to the level of a constitutional violation. In his objections, Muhammad concedes that he does not have a constitutional right to a lower bunk; he asserts, however, that he has a right to be treated the same as other similarly situated prisoners and to seek redress without fear of retaliatory actions

---

[10] The record reflects that on June 19, 2003, Muhammad's request for a bunk pass was referred to the Utilization Review Committee. On June 27, 2003, Muhammad was issued a temporary lower bunk pass for two weeks, and, on July 16, 2003, his lower bunk pass was reissued for six months.

by government officials. In its March 30th Order, the Court dismissed with prejudice Muhammad's equal protection claim, finding that Muhammad only made a conclusory allegation that the other inmates were similarly situated to him, and he failed to allege that the unequal treatment was the result of intentional or purposeful discrimination. In that same Order, the Court also dismissed with prejudice Muhammad's retaliation claim, finding that he did not have a constitutional right to participate in grievance procedures, and that his right to seek redress in the courts was clearly not inhibited. Since the defendants have not engaged in conduct that violates a constitutional right, they are immune from liability. Accordingly, the Court **AFFIRMS** the Magistrate Judge's recommendation and **GRANTS** the defendants' motion with respect to Muhammad's Eighth Amendment claim concerning denial of his request for a low bunk pass.

### 3. Job Assignment

Although Muhammad objects to the Magistrate Judge's recommended finding that his Eighth Amendment claim against Williams and Bunts for failing to enforce his medical restrictions should be dismissed, he provides nothing more than a conclusory allegation that they had the authority to remove him for the job by

**ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE
JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION**

placing him on medical convalescence and/or medical restriction. It is undisputed that, on December 2, 2003, Muhammad was given a medical restriction of no weightlifting greater than fifteen pounds and no prolonged standing greater than thirty minutes. Both of these restrictions did not expire until February 5, 2004. Muhammad, however, has failed to set forth any evidence to support his allegation that Williams and Bunts had the authority to determine his job assignment or to remove him from his job assignment. Because Muhammad has failed to establish that Bunts and Williams were personally responsible for his job assignment or that they failed to honor his medical restriction, the Court **AFFIRMS** the Magistrate Judge's recommendation and **GRANTS** the defendants' motion with respect to Muhammad's Eighth Amendment claim concerning his job assignment.

### III.   CONCLUSION

For the reasons set forth in this Order, the Court **AFFIRMS-IN-PART** and **REJECTS-IN-PART** the Magistrate Judge's Report and Recommendation (dkt no. 49) and **GRANTS-IN-PART** and **DENIES-IN-PART** the Defendants' "Motion to Dismiss, or Alternatively, Motion for Summary Judgment" (dkt. no. 36). Specifically, the Court:

### ORDER AFFIRMING-IN-PART AND REJECTING-IN-PART THE MAGISTRATE JUDGE'S JANUARY 31, 2006 REPORT AND RECOMMENDATION

- **DISMISSES WITH PREJUDICE** defendants Hill and Bledsoe and **DIRECTS** the Clerk to enter judgment for those defendants accordingly;

- **DIRECTS** the Clerk to serve the complaint and a copy of this Order on defendants Buckingham, Puckett, and Bender with the summonses recently provided by Muhammad;

- **DISMISSES WITH PREJUDICE** Muhammad's Eighth Amendment claims concerning the denial of his request for a low bunk pass and assignment of a job which exceeded his medical restriction and **DIRECTS** the Clerk to enter judgment accordingly; and

- **SCHEDULES** a scheduling conference for **April 19, 2006** at **12:15 p.m.,** at which time it will set a schedule for discovery on Muhammad's deliberate indifference claim concerning the alleged denial of pain medication.

It is so **ORDERED.**

The Clerk is directed to mail a copy of this Order to the <u>pro se</u> plaintiff.

DATED: March 31, 2006

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE